## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CARLTON THEODORE LANDIS,** | : | **CIVIL ACTION NO. 1:19-CV-1301** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **LIEUTENANT WILSON**, *et al.*, | : | |
| | : | |
| **Defendants** | : | |

### MEMORANDUM

Plaintiff Carlton Theodore Landis ("Landis"), an inmate who was housed at all relevant times at the United States Penitentiary, Lewisburg, Pennsylvania ("USP-Lewisburg"), commenced this action against 53 individuals employed by the Bureau of Prisons ("BOP") suing them under Bivens[1] and state tort law, and against the BOP under the Administrative Procedure Act ("APA"). The matter is proceeding *via* an amended complaint. (Doc. 72). Before the court is defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b) and for summary judgment pursuant to Federal Rule of Civil Procedure 56. (Doc. 73). For the reasons set forth below, the court will grant the motion.

---

[1] Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1971). In Bivens, the Supreme Court created a limited federal tort counterpart to the remedy created by 42 U.S.C. § 1983 as it applies to federal officers. A Bivens civil rights action under § 1331 has the same standards as a § 1983 civil rights action. See Paton v. La Prade, 524 F.2d 862, 871 (3d Cir. 1975).

I.      **Factual Background & Procedural History**[2]

Named as defendants are former BOP Director Hugh Hurwitz; National

Inmate Appeals Administrator Ian Conners; Northeast Regional Director J. Ray

Ormond; Warden David J. Ebbert; Associate Warden Danon Colbert; Captain John

Konkle; Chief Psychologist Jennifer Enigk; Mid-level Provider Jessie Ayers;

Paramedic Sarah Dees; Paramedic Matthew Barner; Registered Nurse Jeana

Mitterling; Lieutenant Matthew Saylor; Lieutenant Rodney Troutman; Lieutenant

Heidi Wilson; Lieutenant Dallas Beachel; Lieutenant Alfred Scott; Lieutenant Jose

Ordonez; Lieutenant Justin Leonowicz; Officer James Earp; Officer Jeffery Stroud;

Paramedic Matthew Barth; Intelligence Analyst Hamza Boussag; Factory Manager

Robert Buff; Lieutenant Nathan Carper; Assistant Health Services Administrator

("AHSA") Amy Creveling; Lieutenant Daniel Dowkus; Health Services

Administrator ("HAS") Arden Duttry; Paramedic Matthew Fahringer; Cook

Foreman Brandon Funk; Correctional Officer Frederick Gonsar; Correctional

Officer Michael Hackenberg; Correctional Officer Randy Hauger; Correctional

---

[2]    Local Rule 56.1 requires that a motion for summary judgment pursuant to
Federal Rule of Civil Procedure 56 be supported "by a separate, short, and concise
statement of the material facts, in numbered paragraphs, as to which the moving
party contends there is no genuine issue to be tried." LOCAL RULE OF COURT 56.1.
A party opposing a motion for summary judgment must file a separate statement of
material facts, responding to the numbered paragraphs set forth in the moving
party's statement and identifying genuine issues to be tried. Id. Unless otherwise
noted, the factual background herein derives from defendants' Rule 56.1 statement
of material facts. (Doc. 79). Landis did not file a response to defendants' statement
of material facts. The court accordingly deems the facts set forth by defendants to
be undisputed. See LOCAL RULE OF COURT 56.1; see also Doc. 83 ¶ 3 (advising
Landis that failure to file a responsive statement of material facts would result in
the facts set forth in defendants' statement of material facts being deemed
admitted).

Officer Derrick Heim; Correctional Officer Corey Hughes; Correctional Officer
Chad Hurley; Correctional Services Specialists Mike Kemmerer; Correctional
Officer James Kerstetter; Warden of FCI-Terre Haute Brian Lammer; Cook
Foreman Derek Long; Correctional Officer Keith Lytle; Correctional Officer Daren
Mensch; Correctional Officer Brandon Mottern; Correctional Brittany Nickel;
Correctional Officer Jay Rhodes; Correctional Officer Justin Romig; Correctional
Officer Jesse Savidge; Correctional Officer Brady Schnars; Lieutenant Brandon
Shirk; Contract Specialist Adam Simmonds; Recreation Specialist Kyle Solomon;
Cook Foreman Seth Stablewski; Treatment Specialist Dennis Sullivan; Case
Manager Megan Vargeson; and the Bureau of Prisons. (See Doc. 72).

## A.    Facts Regarding Landis' Failure to Exhaust his Administrative Remedies

The BOP has established a three-tiered system whereby a federal prisoner
may seek formal review of any aspect of his imprisonment. (Doc. 79 ¶ 1, citing 28
C.F.R. §§ 542.10-42.19 (2004)). First, "an inmate shall . . . present an issue of concern
informally to staff, and staff shall attempt to informally resolve the issue before an
inmate submits a Request for Administrative Remedy." (Id. ¶ 2, citing § 542.13(a)).
Second, if an inmate is unable to informally resolve his complaint, he may file "a
formal written Administrative Remedy Request, on the appropriate form (BP-9),
[within] 20 calendar days following the date on which the basis for the Request
occurred." (Id. ¶ 4, citing § 542.14(a)). The Warden has 20 days to respond to the
inmate's written Administrative Remedy Request. (Id. ¶ 5, citing § 542.18). "An
inmate who is not satisfied with the Warden's response may submit an Appeal on

3

the appropriate form (BP-10) to the appropriate Regional Director within 20 calendar days of the date the Warden signed the [BP-9] response." (Id. ¶ 6, citing § 542.15(a)). "An inmate who is not satisfied with the Regional Director's response may submit an Appeal on the appropriate form (BP-11) to the General Counsel within 30 calendar days from the date of the Regional Director signed the response." (Id. ¶ 7, citing § 542.15(a)). The Regional Director has 30 days to respond, and the General Counsel has 40 days to respond. (Id. ¶ 8, citing § 542.18). The various administrative levels are represented by letter: F for the institution, R for the Regional Office, and A for the Central Office. (Id. ¶ 10). The number following the letter indicates the number of times that remedy has been re-filed. (Id. ¶ 11).

Since his incarceration with the BOP, Landis has filed 156 administrative remedies. (Id. ¶ 9). Between his designation to USP-Lewisburg on December 29, 2017, to the filing of this action, Landis has filed sixty administrative remedies. (Id. ¶ 12). Of those sixty remedies, Landis exhausted nine of them: Remedy 935629—Special Management Unit ("SMU") referral appeal; Remedy 947097—staff falsified reports/wants to be moved to X-Block; Remedy 947290—wants protective custody and old cell assignment; Remedy 956132—denied recreation; Remedy 956256—staff assaulted/threatened him; Remedy 963087—denied recreation; Remedy 959264—request for protection; Remedy 967256—staff misusing restraints; Remedy 973060—encumbrance violates his rights. (Id. ¶ 13).

In remedy 947097, Landis alleged that staff placed him in a cell with an incompatible inmate on June 21, 2018. (Id. ¶ 14). In remedy 947290, Landis

4

questioned why he was moved from X-Block to D-Block and requested to be moved to protective custody in X-Block. (Id. ¶ 15). In remedy 956256, Landis alleged that he was assaulted by a staff member while being escorted from recreation on October 5, 2018. (Id. ¶ 16). In remedy 959264, Landis sought protection from other inmates who he claimed were threatening and harassing him while at recreation on October 5, 2018. (Id. ¶ 17). In remedy 967256, Landis claimed that BOP staff failed to comply with policy by not using the least restrictive means to restrain inmates, specifically citing Landis' observation of staff putting two inmates in hard ambulatory restraints on January 18, 2019. (Id. ¶ 18).

> **B.  Facts Regarding Restraints**

BOP Program Statement 5566.06, Use of Force, governs the application of restraints. (Id. ¶ 19). Staff is authorized to apply physical restraints necessary to gain control of an inmate who appears to be dangerous because, among other things, the inmate assaults another individual, becomes violent, or displays signs of imminent violence. (Id. ¶ 20). When the situation dictates, the warden may approve more restrictive or secure restraints. (Id. ¶ 21). One such situation may be where less secure restraints have previously proven ineffective or where the inmate's behavior requires more restrictive or secure restraints. (Id. ¶ 22). Staff is to look for a pattern of non-disruptive behavior over a period of time as an indication the inmate has regained self-control and is no longer a disruptive threat. (Id. ¶ 23). Based on staff assessment, the inmate can either be removed from restraints, continue in them, or be placed in progressively more or less restrictive restraints. (Id. ¶ 24). Correctional staff is to assess the inmate and log their observations

every fifteen minutes.  (Id. ¶ 25).  A lieutenant is also required to assess the inmate and log observations every two hours.  (Id. ¶ 26).  Health Services staff must check the restraints twice during each eight-hour shift and Psychology staff are required to check the inmate every 24 hours until the inmate is released from restraints.  (Id. ¶ 27).  Staff is to videotape the use of force and application of restraints and complete a Report of Incident form detailing the incident and staff involved.  (Id. ¶ 28).  An after-action review is then performed to determine if staff actions were reasonable and appropriate.  (Id. ¶ 29).

On December 29, 2017, Landis was transferred to USP-Lewisburg to enter the Special Management Unit program.  (Id. ¶ 30).  Designation to the SMU program is non-punitive and is for inmates who require greater management of their interactions to ensure the safety, security, or orderly operation of BOP facilities.  (Id. ¶ 31).  The conditions are more restrictive than those of general population inmates; however, inmates designated to the SMU are expected to advance through the program and be designated back to an appropriate general population facility.  (Id. ¶ 32).

### 1. *January 3-5, 2018—Use of Force and Restraints*

On January 3, 2018, Landis refused to allow his cellmate to approach the cell-door wicket to be uncuffed.  (Id. ¶ 33).  Landis threatened to stab the staff member attempting to uncuff his cellmate.  (Id. ¶ 34).  Warden Ebbert was notified and authorized a use of force team and the application of ambulatory restraints due to Landis displaying signs of imminent violence.  (Id. ¶ 35).  Lieutenants Beachel and Wilson, Factory Manager Buff, Treatment Specialist Sullivan, Correctional

Officers Hurley and Hackenberg, and Paramedic Barner served on the use of force team. (Id. ¶ 36). Landis submitted to hand restraints and was removed from the cell. (Id. ¶ 37). Landis was searched and placed in ambulatory restraints at 12:05 p.m. (Id. ¶ 38). Landis was medically assessed as a result of a use of force and application of restraints. (Id. ¶ 39). Staff noted that Landis voiced no complaints of injuries and none were noted. (Id. ¶ 40). Staff also noted the restraints were properly applied with no restriction to Landis' circulation or respiration. (Id. ¶ 41). On January 3, 2018, Landis was issued Incident Report 3073477 for threatening bodily harm, a code 203 violation, and refusing an order, a code 307 violation. (Id. ¶ 42). The DHO ultimately found Landis guilty of both charges. (Id.) Correctional Officers Gonsar and Hughes performed 15-minute restraint checks while Landis remained in restraints. (Id. ¶ 43). Lieutenants Wilson, Troutman, and Ordonez performed 2-hour restraint checks on Landis. (Id. ¶ 44).

On January 4, 2018 at 12:33 p.m., Landis was medically assessed after being observed hitting his head off of the cell wall. (Id. ¶ 58). Landis refused to speak to staff but was compliant with staff directives. (Id. ¶ 59). The medical assessment revealed no signs of trauma or injury. (Id. ¶ 60). On January 4, 2018 at 8:00 p.m., Lieutenant Carper performed one 2-hour restraint check on Landis. (Id. ¶ 46). Lieutenant Carper noted that Landis told him to "just fucking check these and get out, fuck off." (Id. ¶ 47). At a restraint check on January 4, 2018 at 12:00 a.m., it was noted that Landis had abrasions on his wrists; however, it was later noted that the skin was intact. (Id. ¶ 61). Because Landis was observed banging his head against the cell wall while in ambulatory restraints, he received Incident Report 3073892 on

January 4, 2018, charging him with self-mutilation in violation of code 228.  (Id. ¶ 45).  The DHO found Landis guilty of committing the prohibited act as charged. (Id.)

On January 5, 2018 at 8:00 a.m., Lieutenant Scott performed one 2-hour restraint check on Landis.  (Id. ¶ 48).  Lieutenant Scott noted that Landis appeared agitated and told him: "when are you going to figure this out, I get my way ever[y] time, that's it."  (Id. ¶ 49).  On January 5, 2018 at 10:00 a.m. and 12:00 p.m., Lieutenant Saylor performed two 2-hour restraint checks on Landis.  (Id. ¶ 50).  At the first restraint check, Lieutenant Saylor noted that Landis was non-compliant to staff orders to calm his behavior.  (Id. ¶ 51).  At the next restraint check, two hours later, Lieutenant Saylor noted Landis' behavior was calm and he removed him from restraints.  (Id. ¶ 52).  Landis' final medical restraint check occurred on January 5, 2018 at 8:00 a.m.  (Id. ¶ 62).  Landis was removed from restraints at 12:00 p.m. on January 5, 2018.  (Id. ¶¶ 53, 62).

In accordance with BOP policy, Health Services staff monitored Landis while he remained in restraints.  (Id. ¶ 54).  Paramedics Barner, Dees, and Barth; Registered Nurse Mitterling; and Mid-Level Provider Ayers conducted medical assessments on Landis while he remained in restraints.  (Id. ¶ 55).  A review of the restraint checks reveals that Landis experienced bilateral swelling in his hands as a result of his manipulation of the wrist restraints.  (Id. ¶ 56).  Each check indicated Landis was educated on the dangers of continued manipulation, and the restraints were placed back in their proper position by the lieutenant.  (Id. ¶ 57).

An after-action review of the use of force and application of restraints was conducted.  (<u>Id.</u> ¶ 63).  Warden Ebbert, Associate Warden Colbert, Captain Rhodes, Deputy Captain Konkle, and AHSA Duttry participated in the after-action review. (<u>Id.</u> ¶ 64).  After reviewing the staff memos and video footage, it was concluded that the use of force and application of restraints was reasonable and appropriate.  (<u>Id.</u> ¶ 65).

### 2.   *January 11-14, 2018—Use of Force and Restraints*

On January 11, 2018, while in a holding cell in receiving and discharge, Landis refused to submit to hand restraints, refused to be moved back to his assigned cell, and threatened to kill the staff member if he attempted to handcuff him.  (<u>Id.</u> ¶ 66).  Warden Ebbert was notified and authorized a use of force team and the application of ambulatory restraints due to Landis displaying signs of imminent violence.  (<u>Id.</u> ¶ 67).  AHSA Creveling; Treatment Specialist Sullivan; Factory Manager Buff; Correctional Officers Earp, Hurley, and Hackenburg; and Lieutenant Beachel were on the use of force team.  (<u>Id.</u> ¶ 68).  Landis submitted to hand restraints and was removed from the cell.  (<u>Id.</u> ¶ 69).  On January 11, 2018 at 9:50 a.m., Landis was searched and placed in ambulatory restraints.  (<u>Id.</u> ¶ 70).  The lieutenant and medical staff found the restraints were properly applied and Landis sustained no injuries.  (<u>Id.</u> ¶ 71).  Landis was medically assessed as a result of a use of force and application of restraints.  (<u>Id.</u> ¶ 72).  Staff noted that Landis complained that his wrists hurt.  (<u>Id.</u> ¶ 73).  An exam yielded no signs of trauma or injury.  (<u>Id.</u> ¶ 74).  Staff noted the restraints were properly applied with no restriction to Landis' circulation or respiration.  (<u>Id.</u> ¶ 75).

On January 11, 2018, Landis was issued Incident Report 3076408 charging him with a code 203 violation, threatening bodily harm.  (Id. ¶ 76).  The DHO found Landis guilty of committing the prohibited act as alleged.  (Id.)

Cook Foreman Funk, Long, and Stablewski; Case Manager Vargeson; Intelligence Analyst Boussag; Contract Specilaist Simmonds; and Correctional Officers Kerstetter, Lytle, Hauger, Mottern, Schnars, Mensch, Gonsar, Romig, and Nickel performed 15-minute restraint checks while Landis remained in restraints.  (Id. ¶ 77).  On January 11, 2018, Lieutenants Beachel and Dowkus and Correctional Services Specialist Kemmerer performed 2-hour restraint checks on Landis.  (Id. ¶ 78).

While in ambulatory restraints on January 12, 2018, when a lieutenant attempted to enter Landis' cell to conduct a restraint check, Landis began violently kicking his cell door in an attempt to breach the cell door.  (Id. ¶ 79).  Landis complied with orders to stop kicking the door, but then threatened to assault any staff entering his cell.  (Id. ¶ 80).  Because Landis continued being disruptive, displayed signs of imminent violence, and prevented staff from checking his restraints, the Acting Warden was contacted.  (Id. ¶ 81).  Acting Warden Colbert authorized a use of force team and the application of four-point restraints due to Landis' continued disruptive behavior.  (Id. ¶ 82).  Lieutenant Shirk; Correctional Officers Heim, Hughes, and Savidge; Recreation Specialist Solomon; Paramedic Barner; and Cook Foreman Stablewski participated in the use of force team.  (Id. ¶ 83).  Lieutenant Shirk was the Use of Force Team Lieutenant in charge of upgrading Landis from ambulatory restraints into four-point restraints.  (Id. ¶ 84).

Landis placed his hand out of the food slot in order for staff to maintain control of him. (Id. ¶ 85). Landis was removed from cell D-102 and escorted in a controlled manner to the D-Block, first floor landing area where he was visually searched, and metal detected. (Id. ¶ 86). Landis was then escorted from D-Block to J-Block. (Id. ¶ 87). On January 12, 2018 at 3:45 p.m., once in cell J-327, Landis was placed in four-point restraints. (Id. ¶¶ 88, 89). The lieutenant and medical staff found that the restraints were properly applied, and Landis sustained no injuries. (Id. ¶ 90). During the escort, Lieutenant Shirk was informed by the camera operator that the camera had malfunctioned. (Id. ¶ 91). At 3:33 p.m., the use of force team was ordered to halt while a new camera was located and arrived. (Id. ¶ 92). At 3:36 p.m., camera footage resumed, and the team was instructed to continue with the escort process. (Id. ¶ 93). There were no other known breaks in the camera footage and no staff injuries or loss of equipment noted during the immediate use of force. (Id. ¶ 94). Due to this incident, Landis was issued Incident Report 3077102, charging him with violating code 203, threatening bodily harm. (Id. ¶ 95). The DHO found Landis guilty of violating code 203. (Id.)

From January 12, 2018 through January 14, 2018, Lieutenants Ordonez, Beachel, Troutman, Shirk, Carper, Scott, Leonowicz and Saylor and Correctional Services Specialist Kemmerer performed 2-hour restraint checks on Landis. (Id. ¶ 96). Landis was downgraded to ambulatory restraints on January 13, 2018 at 6:00 p.m., and ultimately removed from restraints on January 14, 2018 at 8:30 a.m., after staff determined Landis had regained self-control. (Id. ¶ 97).

In accordance with BOP policy, Health Services staff monitored Landis while he remained in restraints.  (Id. ¶ 98).  A review of the restraint checks indicates that Landis again experienced bilateral swelling in his hands as a result of his manipulation of the wrist restraints.  (Id. ¶ 99).  AHSA Creveling; Paramedics Fahringer, Dees, and Barner; and Registered Nurse Mitterling all performed medical assessments on Landis while he remained in restraints.  (Id. ¶ 100).  During each check, Landis was educated on the dangers of continued manipulation and the restraints were placed back in their proper position by the lieutenant.  (Id. ¶ 101).  On January 12, 2018, Landis was medically assessed as a result of a use of force and placement in four-point restraints.  (Id. ¶ 104).  Staff noted that Landis had no injuries, other than slightly swollen appendages due to manipulating the ambulatory restraints.  (Id. ¶ 105).  Staff assessed the four-point restraints as properly applied with no restriction to Landis' circulation or respiration.  (Id. ¶ 106).  On January 13, 2018 at 4:00 p.m., it was noted that Landis had blisters due to his manipulation of the wrist restraints.  (Id. ¶ 102).  Landis' final medical restraint check occurred on January 14, 2018 at 8:00 a.m., and he was thereafter released from restraints.  (Id. ¶ 103).

A review of Landis' medical records from January 2018 to present shows he had no further complaints concerning his wrists, nor did he seek treatment for any alleged injuries as a result of his placement in restraints.  (Id. ¶ 107).  A review of disciplinary records reveals that from May 10, 2007 until November 7, 2019, Landis received incident reports and was disciplined and sanctioned 48 times.  (Id. ¶ 111).

After-action reviews of both use of force incidents and the application of ambulatory and four-point restraints were conducted.  (Id. ¶ 108).  It was concluded that both uses of force and application of restraints were reasonable and appropriate.  (Id.)  Warden Lammer, Associate Warden Rhodes, Captain Konkle, and AHSA Duttry participated in the after-action reviews.  (Id. ¶ 109).  We also note that Chief Psychologist Enigk is a commissioned officer and member of the United States Public Health Service and was detailed to USP-Lewisburg.  (Id. ¶ 110).

Defendants now move to dismiss Landis' amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), and for summary judgment pursuant to Federal Rule of Civil Procedure 56.  (Doc. 73).  The BOP defendants and the BOP move to dismiss the amended complaint on the following grounds: (1) sovereign immunity bars this court's subject matter jurisdiction over Landis' official capacity claims; (2) Chief Psychologist Enigk is statutorily immune from Bivens liability; (3) this court lacks subject matter jurisdiction over Landis' supplemental tort claims; (4) Landis failed to state a claim under the APA against the BOP; (5) Landis failed to set forth sufficient facts to state a claim for an alleged § 1985(3) or § 1986 violation, and failed to state equal protection, due process, or retaliation claims; (6) Landis failed to allege personal involvement of Warden Lammer, Captain Konkle, former Director Hurwitz, National Inmate Appeals Administrator Conners, Northeast Regional Director Ormond, Correctional Officer Rhodes, Health Services Administrator Duttry, or Officer Stroud; (7) the favorable termination rule bars Landis' claims that the BOP defendants falsified incident reports and used excessive force in placing him in restraints on January 3, 11, and 12, 2018; and (8)

13

the court should decline to imply a <u>Bivens</u> remedy regarding Landis' excessive

force claim under the Eighth Amendment.  (<u>See</u> Doc. 80).  The 53 BOP defendants

move for summary judgment based on Landis' failure to exhaust his administrative

remedies with respect to his <u>Bivens</u> claims[3] or, alternatively, because Landis failed

to set forth sufficient facts to state a claim for excessive force and deliberate

indifference under the Eighth Amendment.  (<u>See</u> <u>id.</u>)  Landis failed to respond to

defendants' motion and the time for responding has now passed.[4]  Therefore, the

motion is deemed unopposed and ripe for resolution.

## II.    <u>Rule 12(b)(1) Motion</u>

### A.    **Legal Standard**

Federal Rule of Civil Procedure 12(b)(1) authorizes a court to dismiss an

action for lack of subject matter jurisdiction.  FED. R. CIV. P. 12(b)(1).  Motions

brought under Rule 12(b)(1) may present either a facial or factual challenge to the

court's subject matter jurisdiction.  <u>Gould Elecs., Inc. v. United States</u>, 220 F.3d 169,

176 (3d Cir. 2000).  In reviewing a facial challenge under Rule 12(b)(1), the standards

associated with Rule 12(b)(6) are applicable.  <u>See</u> <u>id.</u>  In this regard, the court must

accept all factual allegations in the complaint as true, and the court may consider

---

[3]  In accordance with <u>Paladino v. Newsome</u>, 885 F.3d 203 (3d Cir. 2018), the court placed the parties on notice that it would consider exhaustion in its role as fact finder and afforded them the opportunity to be heard under <u>Small v. Camden Cty.</u>, 728 F.3d 265 (3d Cir. 2013).  (Doc. 109).

[4]  Landis was directed to file a brief in opposition to defendants' motion and was admonished that failure to file an opposition brief would result in defendants' motion being deemed unopposed.  (Doc. 83) (citing M.D. PA. LOCAL RULE OF COURT 7.6).

only the complaint and documents referenced in or attached to the complaint.  In a factual challenge to the court's subject matter jurisdiction, the court's analysis is not limited to the allegations of the complaint, and the presumption of truthfulness does not attach to the allegations.  Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977).  Instead, the court may consider evidence outside the pleadings, including affidavits, depositions, and testimony, to resolve any factual issues bearing on jurisdiction.  Gotha v. United States, 115 F.3d 176, 179 (3d Cir. 1997).

Once the court's subject matter jurisdiction over a complaint is challenged, the plaintiff bears the burden of proving that jurisdiction exists.  Mortensen, 549 F.2d at 891.  If a dispute of material fact exists, "the court must conduct a plenary hearing on the contested issues prior to determining jurisdiction."  McCann v. Newman Irrevocable Tr., 458 F.3d 281, 290 (3d Cir. 2006); see also Berardi v. Swanson Mem'l Lodge No. 48, 920 F.2d 198, 200 (3d Cir. 1990) (stating that a district court must ensure that a plaintiff has "had an opportunity to present facts by affidavit or by deposition, or in an evidentiary hearing," to support his claim of jurisdiction (citation omitted)).

### B. Official Capacity Claims against the BOP Defendants

The BOP defendants argue that Landis' Bivens claims against them in their official capacities are barred by sovereign immunity.  (Doc. 80 at 16-17). Sovereign immunity bars any claims brought against the defendants in their official capacities.  Specifically, sovereign immunity constitutes a jurisdictional bar to claims against the United States and its agencies, unless Congress has

specifically waived such immunity.  FDIC v. Meyer, 510 U.S. 471, 475 (1994).

Indeed, "[a]n action against government officials in their official capacities

constitutes an action against the United States [and is] barred by sovereign

immunity, absent an explicit waiver."  Lewal v. Ali, 289 F. App'x 515, 516 (3d

Cir. 2008); Webb v. Desan, 250 F. App'x 468, 471 (3d Cir. 2007).

Bivens does not waive sovereign immunity with respect to claims

brought against federal employees sued in their official capacities.  Corr. Servs.

Corp. v. Malesko, 534 U.S. 61, 72 (2001) ("If a federal prisoner in a BOP facility

alleges a constitutional deprivation, he may bring a Bivens claim against the

offending individual officer, subject to the defense of qualified immunity.  The

prisoner may not bring a Bivens claim against the officer's employer, the

United States, or the BOP.").  Thus, Landis' claims against the BOP

defendants in their official capacities are barred by sovereign immunity and

will be dismissed for lack of jurisdiction.  Lewal, 289 F. App'x at 516; Webb, 250

F. App'x at 471.

## C.    The Public Health Service Act Precludes Suit against Defendant Enigk

Landis sets forth claims against Chief Psychologist Enigk based on her

involvement in the after-action reviews for two use of force incidents and

application of restraints in January 2018.  (Doc. 72 at 29-30).  Defendant Enigk

is a commissioned officer and member of the United States Public Health

Service and was assigned to USP-Lewisburg as the Chief Psychologist.  (Doc.

79 ¶ 110).  Under the Public Health Service Act, the exclusive remedy for

personal injury damages resulting from the performance of medical functions by any officer or employee of the Public Health Service while acting within the scope of their office or employment is a suit against the United States pursuant to the FTCA.  See 42 U.S.C. § 233(a).  Section 233(a) thus "grants absolute immunity to [Public Health Service] officers and employees for actions arising out of the performance of medical or related functions within the scope of their employment by barring all actions against them for such conduct."  Hui v. Castaneda, 559 U.S. 799, 806 (2010).  Thus, the Public Health Service Act precludes suit against Chief Psychologist Enigk and she is entitled to dismissal from this action.

### D.   Supplemental Tort Claims

Landis is suing the 53 individual BOP defendants for various supplemental tort claims, including negligence, negligent infliction of emotional distress, intentional infliction of emotional distress, and assault and battery.  (Doc. 72 at 13). However, the proper avenue to pursue these supplemental tort claims is a claim against the United States under the FTCA.  See 28 U.S.C. §§ 2674, 2679; CNA v. United States, 535 F.3d 132, 138 n. 2 (3d Cir. 2008) ("The Government is the only proper defendant in a case brought under the FTCA.").  Landis' supplemental tort claims may not proceed against the individual defendants.  Therefore, the court will grant defendants' motion to dismiss these claims against the 53 BOP defendants for lack of jurisdiction.

### E.     Leave to Amend

Before dismissing a complaint for failure to state a claim upon which relief may be granted, the court must grant Landis leave to amend his complaint unless amendment would be inequitable or futile.  See Grayson v. Mayview State Hospital, 293 F.3d 103, 114 (3d Cir. 2002).  The court finds that amendment would be futile because Landis cannot remedy the deficiencies in the amended complaint: that sovereign immunity bars the court's subject matter jurisdiction over the defendants in their official capacities, that defendant Enigk is statutorily immune from Bivens liability, and that the court lacks subject matter jurisdiction over Landis' supplemental tort claims.

## III.   Rule 12(b)(6) Motion

### A.     Legal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6).  When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept as true all [factual] allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)).  Although the court is generally limited in its review to the facts contained in the complaint, it "may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case."  Oshiver v. Levin, Fishbein, Sedran &

Berman, 38 F.3d 1380, 1384 n. 2 (3d Cir. 1994); see also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Federal notice and pleading rules require the complaint to provide "the defendant notice of what the . . . claim is and the grounds upon which it rests." Phillips v. Cty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To test the sufficiency of the complaint in the face of a Rule 12(b)(6) motion, the court must conduct a three-step inquiry. See Santiago v. Warminster Twp., 629 F.3d 121, 130-31 (3d Cir. 2010). In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)). Next, the factual and legal elements of a claim should be separated; well-pleaded facts must be accepted as true, while mere legal conclusions may be disregarded. Id.; see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Once the well-pleaded factual allegations have been isolated, the court must determine whether they are sufficient to show a "plausible claim for relief." Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level"). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

### B.      Failure to State a Claim Under the Administrative Procedure Act

Landis asserts that he is suing under the Administrative Procedure Act in order to compel the BOP to comply with its own policies. (Doc. 72 at 40).

The APA provides that "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. § 704. There are "two conditions that generally must be satisfied for agency action to be 'final' under the APA": (1) "the action must mark the consummation of the agency's decisionmaking process"; and (2) "the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." United States Army Corps of Eng'rs v. Hawkes Co., Inc., 136 S. Ct. 1807, 1813 (2016) (quoting Bennett v. Spear, 520 U.S. 154, 177-78 (1997)). If the action is not a "final agency action," 5 U.S.C. § 704, "a plaintiff who challenges such an action cannot state a claim under the APA," and "the action must be dismissed." Chehazeh v. Att'y Gen. of the U.S., 666 F.3d 118, 126 n. 1 (3d Cir. 2012) (internal quotations marks and citations omitted). Landis failed to allege any final agency action that he is challenging. (See Doc. 72 at 39-41). Therefore, the court will dismiss Landis' claim under the APA.

## C. Failure to State a Claim under Sections 1985(3) and 1986

Landis alleges that the 53 BOP defendants conspired to deprive him of equal protection of the laws in violation of 42 U.S.C. § 1985(3) and 42 U.S.C. § 1986. (Doc. 72 at 12, 39).

To prevail under § 1985(3), a plaintiff must prove the following elements: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the

conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." United Brotherhood of Carpenters and Joiners of Am., Local 610, AFL-CIO v. Scott, 463 U.S. 825, 828-29 (1983).  In the amended complaint, Landis simply states that "the Defendants conspired amongst each other to adopt and implement an illicit 'use of force and application of restraints' policy and a dangerous cell assignment policy in order to deprive Plaintiff, and other African American inmates, of equal protection of the laws."  (Doc. 72 at 39).  Such conclusory allegations do not form the basis for a claim based on a violation of § 1985.

First, Landis has satisfied the identifiable class requirement of § 1985 by alleging that defendants discriminate against African American inmates. Second, "[a] conspiracy claim based upon Section 1985(3) requires a clear showing of invidious, purposeful and intentional discrimination between classes or individuals."  Robinson v. McCorkle, 462 F.2d 111, 113 (3d Cir. 1972). The type of race-based discrimination alleged by Landis is invidious.  See Farber v. City of Paterson, 440 F.3d 131, 141 (3d Cir. 2006) ("to state a § 1985(3) claim, it must be independently determined that discrimination . . . is invidious in the same way that discrimination directed at African-Americans is invidious.").  Third, Landis has alleged a violation of a right recognized under § 1985—his right to equal protection of the laws.  However, Landis fails to allege sufficient specific facts to support any conspiratorial agreement actionable under § 1985(3).  (Doc. 72 at 12, 39; Doc. 89 at 2).  Mere conclusory allegations of deprivations of constitutional rights under § 1985(3) are insufficient to state a

claim under § 1985(3).  See Robinson, 462 F.2d at 113; Kokinda v. Pennsylvania

Dep't of Corr., 779 F. App'x 944, 948-49 (3d Cir. 2019) (nonprecedential).

Landis has failed to allege any specific facts showing that a conspiracy existed.

Thus, his claim under § 1985(3) must fail.

Next, Landis brings a claim under 42 U.S.C. § 1986.  (Doc. 72 at 39).

Section 1986 is a companion to § 1985(3).  In order to state a claim under §

1986, a plaintiff must allege that: "(1) the defendant had actual knowledge of a

§ 1985 conspiracy, (2) the defendant had the power to prevent or aid in

preventing the commission of a § 1985 violation, (3) the defendant neglected or

refused to prevent a § 1985 conspiracy, and (4) a wrongful act was committed."

Clark v. Clabaugh, 20 F.3d 1290, 1295 (3d Cir. 1994).  Therefore, if a plaintiff

does not set forth a cause of action under § 1985, his claim under § 1986

necessarily fails as well, because "transgressions of § 1986 by definition depend

on a preexisting violation of § 1985."  Rogin v. Bensalem Tp., 616 F.2d 680, 696

(3d Cir. 1980).  Because Landis cannot proceed with a claim under § 1985(3),

his claim under § 1986 necessarily fails.  See id.  Moreover, even if Landis had

valid claims under § 1985, his claims under § 1986 must be dismissed because

they were filed beyond the statute of limitations for § 1986 actions.  Section

1986 provides its own statute of limitations, which states that "no action under

the provisions of this section shall be sustained which is not commenced

within one year after the cause of action has accrued."  42 U.S.C. § 1986.  In

this case, Landis' cause of action under § 1986 accrued in January 2018, but he

did not file his complaint until July 2019.  Thus, his claims against the

defendants under § 1986 must be dismissed because they were not brought within the one-year statute of limitations.

### D.    Failure to State an Equal Protection Claim

Landis alleges that the 53 BOP defendants violated his right to equal protection by treating him differently from other inmates.  (Doc. 72 at 36-37). The Equal Protection Clause of the Fourteenth Amendment commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike."  City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985).  Thus, to state a claim under the Equal Protection Clause, a plaintiff must allege that: (1) he is a member of a protected class; and (2) he was treated differently from similarly situated inmates.  See id.  Landis has alleged that he is a member of a protected class.  However, he fails to allege *how* defendants treated him differently than others similarly situated. Additionally, Landis fails to identify any personal involvement by any named defendant that would subject them to liability for any alleged equal protection violation.  For these reasons, the court will grant defendants' motion to dismiss the equal protection claim.

### E.    Failure to State a Due Process Claim

Landis next alleges that the 53 BOP defendants violated his due process rights by placing him in restraints.  (Doc. 72 at 46-47).  The United States Supreme Court has held that "where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of

government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." Albright v. Oliver, 510 U.S. 266, 273 (1994) (internal citations, quotations, and ellipses omitted).  To the extent that Landis is alleging that the use of restraints violated his substantive due process rights under the Fourteenth Amendment, they are related to the excessive use of force claim and are properly addressed through the Eighth Amendment.  See Mohamad v. Barone, 494 F. App'x 212, 214-15 (3d Cir. 2012) (nonprecedential).

### F.   Failure to State a Retaliation Claim against Defendants Ebbert, Colbert, Wilson, and Beachel

The First Amendment offers protection for a wide variety of expressive activities.  See U.S. CONST. amend I.  To prevail on a retaliation claim, Landis must demonstrate that: (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action at the hands of prison officials; and (3) his constitutionally protected conduct was a substantial or motivating factor in the decision to take the adverse action.  Watson v. Rozum, 834 F.3d 417, 422 (3d Cir. 2016) (citing Rauser v. Horn, 241 F.3d 330, 333-34 (3d Cir. 2001)).  An "adverse action" is one that would "deter a person of ordinary firmness" from exercising his First Amendment rights.  Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000) (quoting Suppan v. Dadonna, 203 F.3d 228, 235 (3d Cir. 2000)).  Retaliatory motive can be inferred from either: (1) an unusually suggestive temporal proximity between the protected activity and the alleged retaliatory action; or (2) a pattern of

antagonism coupled with timing that suggests a causal link.  Id. (citing Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007)).

The court finds that Landis has failed to allege that he engaged in constitutionally protected activity sufficient to satisfy the first prong of a retaliation claim.  See Rauser, 241 F.3d at 333.  Landis asserts that he was placed in restraints in retaliation for refusing a cellmate.  However, Landis has no constitutional right to choose a cellmate.  See Murray v. Bledsoe, 650 F.3d 246, 247 (3d Cir. 2011) (observing that "those courts confronted with the question of whether inmates have a constitutional right to choose a cellmate have held that no such right exists.") (citations omitted).  Because Landis has failed to establish, as a matter of law, the first prong of a First Amendment retaliation claim, this claim will be dismissed.

### G. Lack of Personal Involvement of Defendants Lammer, Konkle, Hurwitz, Conners, Ormond, Rhodes, and Duttry[5]

To state a Bivens claim, a plaintiff must demonstrate that the individual was acting under the color of federal law and deprived him of a right secured by the Constitution.  Brown v. Philip Morris, Inc., 250 F.3d 789, 800 (3d Cir. 2001).  It is well-established that personal liability in a civil rights action cannot be imposed upon an official based on a theory of respondeat superior.  See, Rizzo v. Goode, 423 U.S. 362 (1976); Hampton v. Holmesburg Prison Officials, 546 F.2d 1077, 1082 (3d Cir. 1976).  "A defendant in a civil rights action must have personal involvement in

---

[5] Defendants also move to dismiss the claims against Officer Stroud based on lack of personal involvement and failure to state a claim.  (Doc. 80 at 31).  The court disagrees, in part, and instead will include defendant Stroud its discussion of the conditions of confinement claim.

the alleged wrongs. . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1998); see also Atkinson v. Taylor, 316 F.3d 257 (3d Cir. 2003). Such allegations, however, must be made with appropriate particularity in that a complaint must allege the particulars of conduct, time, place, and person responsible. Evancho v. Fisher, 423 F.3d 347, 354 (3d Cir. 2005); Rode, 845 F.2d at 1207-08; Sutton v. Rasheed, 323 F.3d 236, 249-50 (3d Cir. 2003). Alleging a mere hypothesis that an individual defendant had personal knowledge or involvement in depriving the plaintiff of his rights is insufficient to establish personal involvement. Rode, 845 F.2d at 1208.

It appears that Landis seeks to hold Warden Lammer, Captain Konkle, former Director Hurwitz, National Inmate Appeals Administrator Conners, Northeast Regional Director Ormond, Correctional Officer Rhodes, and HSA Duttry liable based solely upon their respective supervisory positions. (Doc. 72 at 18 ¶ 20; 29-30 ¶ 71). Landis also alleges that defendants Lammer, Konkle, Rhodes, and Duttry participated in the after-action reviews and were aware of their staffs' violation of policy. (Id.) Supervisors, however, "may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." Iqbal, 556 U.S. at 676. Accordingly, to the extent that Landis' claims against these defendants rely on a *respondeat superior* theory of liability, they are entitled to dismissal on this ground.

Additionally, with respect to defendants Lammer, Konkle, Rhodes, and Duttry, Landis appears to assert liability based on their violation of BOP

policy.  (Doc. 72 at 18 ¶ 20; 29-30 ¶ 71).  However, a violation of an internal prison policy does not automatically rise to the level of a constitutional violation.  "[A] prison policy manual does not have the force of law and does not rise to the level of a constitutional violation."  Atwell v. Lavan, 557 F.Supp.2d 532, 556, n. 24 (M.D. Pa. 2008) (citing Mercy Catholic Med. Ctr. v. Thompson, 380 F.3d 142, 154 (3d Cir. 2004)).  The Third Circuit has clearly stated that "agency interpretive guidelines 'do not rise to the level of a regulation and do not have the effect of law.'"  Mercy Catholic Med. Ctr., 380 F.3d at 155 (citation omitted).  Therefore, defendants Lammer, Konkle, Rhodes, and Duttry cannot be liable simply for violating a prison policy.  See Estrella v. Hogsten, 2007 WL 2065879 (M.D. Pa. July 16, 2007) (holding that mere failure of prison officials to follow their own regulations alone is not a constitutional violation).

For all the foregoing reasons, defendants Lammer, Konkle, Hurwitz, Conners, Ormond, Rhodes, and Duttry are entitled to dismissal from this action based on lack of personal involvement in the alleged wrongful conduct.

### H.    Failure to State a Claim Against Defendant Stroud

Landis alleges that when he was in ambulatory restraints on January 4, 2018, defendant Stroud opened the cell window and let freezing air in his cell and placed his lunch on the top bunk, in violation of his Eighth Amendment rights.  (Doc. 72 at 16).  Viewing the allegations in the light most favorable to Landis, the court does not believe that he has established a deprivation that society would be unwilling to tolerate.

The Eighth Amendment's prohibition of cruel and unusual punishment imposes duties on prison officials to provide prisoners with the basic necessities of life, such as food, clothing, shelter, sanitation, medical care, and personal safety.  See Farmer v. Brennan, 511 U.S. 825, 832 (1994); Helling v. McKinney, 509 U.S. 25, 31 (1993).  It is well-settled that prison conditions constitute cruel and unusual punishment if they result in serious deprivations of basic human needs.  See Tillman v. Lebanon Cnty. Corr. Facility, 221 F.3d 410 (3d Cir. 2000).  A condition of confinement implicates the Eighth Amendment if it is so reprehensible as to be deemed inhumane under contemporary standards or deprives an inmate of minimal civilized measures of the necessities of life.  See Hudson v. McMillian, 503 U.S. 1, 8 (1992); Wilson v. Seiter, 501 U.S. 294, 298 (1991).  However, the Eighth Amendment does not mandate that prisons be free of discomfort.  Farmer, 511 U.S. at 833 (quoting Rhodes v. Chapman, 452 U.S. 337, 349 (1981)).  Under Farmer, an inmate must show that a prison official actually knew or was aware of a substantial risk to inmate safety and deliberately disregarded that risk.  Beers-Capitol v. Whetzel, 256 F.3d 120, 125 (3d Cir. 2001).  This requirement of actual knowledge means that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Farmer, 511 U.S. at 837.

The length of the inmate's exposure to the alleged unconstitutional conditions and the totality of the circumstances must be considered when making a determination as to cruel and unusual punishment.  See Nami v.

Fauver, 82 F.3d 63, 67 (3d Cir. 1996); see also Wilson, 501 U.S. at 305.  A

prisoner must also establish a specific deprivation of a single, identifiable

necessity.  Wilson, 501 U.S. at 304-05.

Landis first complains about the temperature of his cell on January 4,

2018.  While it has been held that heating and ventilation are relevant

considerations in determining whether prison conditions meet constitutional

muster, see Tillery v. Owens, 907 F.2d 418, 426 (3d Cir. 1990), the court must

look to the totality of the circumstances.  Here, Landis complains of the

freezing temperature of his cell on January 4, 2018 that "caused [his] limbs to

shake and go numb."  (Doc. 72 at 16 ¶ 8).  Landis alleges that he was subjected

to this cold on one occasion.  (Id.)  Aside from asserting that his limbs were

shaking and numb, he has not alleged that he suffered any significant harm

from the cold.  The court finds that this discomfort is "part of the penalty that

criminal offenders pay for their offenses against society," Farmer, 511 U.S. at

856, and is not an extreme deprivation that constitutes a denial of "the minimal

civilized measures of life's necessities."  Hudson, 503 U.S. at 9.

Landis also complains that on January 4, 2018, defendant Stroud placed

his lunch on the top bunk, and he was not able to reach the food.  (Doc. 72 at 16

¶ 10).  The Third Circuit has held that the denial of food on one occasion does

not violate the Eighth Amendment.  See Lindsey v. O'Connor, 327 F. App'x

319, 321 (3d Cir. 2009) ("The purported deprivation of a single meal is not of

such magnitude as to rise to the level of a constitutional violation.") (citation

omitted).  Because Landis claims that he was unable to eat lunch on one

occasion, he has failed to state an Eighth Amendment claim of deprivation of food.  See id.

As stated above, the Constitution "does not mandate comfortable prisons." Rhodes, 452 U.S. at 349.  Even viewing the complaint in the light most favorable to Landis, he has not alleged any actual harm caused by the conditions discussed above.  The court concludes that Landis has not demonstrated the existence of a serious constitutional deprivation redressable under Farmer.

I.      **Favorable Termination Rule**

Landis asserts that the incident reports issued against him were falsified and resulted in his placement in restraints on January 3, 2018, January 11, 2018, and January 12, 2018 in violation of the Eighth Amendment.  In response, defendants argue that Landis' Eighth Amendment claim is barred by the favorable termination rule in Heck v. Humphrey, 512 U.S. 477 (1994).  In Heck, the Supreme Court ruled that a constitutional cause of action for damages does not accrue "for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid," until the plaintiff proves that the "conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus."  Id. at 486-87.

In Edwards v. Balisok, 520 U.S. 641 (1997), the Supreme Court extended the rationale in Heck to disciplinary proceedings, holding that the expungement of the inmate disciplinary proceeding would imply the invalidity of the underlying

disciplinary action: "[t]he principal procedural defect complained of by the respondent would, if established, necessarily imply the invalidity of the deprivation of his good-time credits." Edwards, 520 U.S. at 646.  Accordingly, an inmate may not bring a civil rights action for declaratory and injunctive relief related to an inmate disciplinary proceeding without first challenging and overturning, *via* appropriate proceedings, the disciplinary hearing in question.  Id. at 646-47.

Here, an award of damages would implicate the validity of the underlying disciplinary proceedings.  Landis cannot assert such a claim unless he can demonstrate that the DHO's decisions regarding the misconducts were invalidated on administrative appeal or through issuance of a writ of habeas corpus.  There is no evidence that the DHO's decisions were invalidated through the BOP's administrative remedy review system.  Further, there is no indication that a petition for writ of habeas corpus challenging the validity of the misconduct proceedings was ever pursued or resolved favorably to Landis.  Thus, because the disciplinary proceedings have not been determined unlawful, it is appropriate to dismiss this claim pursuant to Heck and Edwards.

J.     **A Bivens Remedy is not Available for Landis' Excessive Force Claims**

Defendants move to dismiss the excessive force claims on the basis that there is no Bivens remedy available for this Eighth Amendment claim.  (Doc. 80 at 33-40).  In so moving, they rely on the Supreme Court's pronouncement in Ziglar v. Abbasi, 582 U.S. ____, 137 S. Ct. 1843 (2017), that "expanding the Bivens remedy is now a

'disfavored' judicial activity."  Ziglar, 137 S. Ct. at 1857 (quoting Iqbal, 556 U.S. at 675).

By way of background, in Bivens, the Supreme Court concluded that, even absent statutory authorization, it would enforce a damages remedy allowing individuals to be compensated after experiencing Fourth Amendment violations of the prohibition against unreasonable searches and seizures.  Bivens, 403 U.S. at 397.  The Court extended Bivens to include a Fifth Amendment Due Process damages remedy to an administrative assistant claiming that a Congressman discriminated against her based on gender.  Davis v. Passman, 442 U.S. 228, 249-49 (1979).  The Court extended Bivens yet again in 1980, concluding that the Eighth Amendment's prohibition on cruel and unusual punishment provided a prisoner a cause of action for damages against prison officials who failed to treat his asthma.  Carlson v. Green, 446 U.S. 14, 19 (1980).  "These three cases—Bivens, Davis, and Carlson—represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself."  Ziglar, 137 S. Ct. at 1855.

In Ziglar, the Supreme Court set forth a two-part test to determine whether a Bivens claim may proceed.  Ziglar, 137 S. Ct. at 1857 (quoting Iqbal, 556 U.S. at 675). Initially, courts must determine whether the case presents a new Bivens context; "[i]f the case is different in a meaningful way from previous Bivens cases decided by th[e] [Supreme] Court, then the context is new."  Id. at 1859.  "A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be

confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous <u>Bivens</u> cases did not consider." <u>Id.</u> at 1859-60.  If the case presents a new context, a court must consider whether any alternative remedies exist.  <u>Id.</u> at 1859-60.  Even absent alternative remedies, a court must also consider whether special factors counsel against extending the <u>Bivens</u> remedy.  <u>Id.</u>

In the matter *sub judice*, Landis alleges that defendants used excessive force against him in violation of his Eighth Amendment rights.  He asserts that the BOP defendants fabricated incident reports and restraint checks in order to justify his placement and continuation in restraints.  There is no question that Landis' excessive force claim presents a new context because it is "different in a meaningful way from previous <u>Bivens</u> cases decided by [the Supreme] Court."  <u>Ziglar</u>, 137 S. Ct. at 1859.[6]  The Supreme Court has never extended <u>Bivens</u> to claims against federal prison officials for use of excessive force.  Of the three cases in which the Supreme Court has recognized <u>Bivens</u> claims—<u>Ziglar</u>, <u>Davis</u>, and <u>Carlson</u>—, <u>Carlson</u> is the only case that involves an Eighth Amendment claim.  However, Landis' claims are markedly different from the Eighth Amendment inadequate medical care claim in <u>Carlson</u>.  <u>See</u> <u>Mammana v. Barben</u>, 856 F. App'x 411 (3d Cir. 2021)

---

[6] Landis' claims "bear little resemblance" to "a claim against FBI agents for handcuffing a man in his own home without a warrant; a claim against a Congressman for firing his female secretary; and a claim against prison officials for failure to treat an inmate's asthma," the contexts previously recognized by the Supreme Court. <u>Ziglar</u>, 137 S. Ct. at 1860.

(nonprecedential) (rejecting inmate's argument that Carlson gives footing to an Eighth Amendment conditions-of-confinement claim against federal officials); Bistrian v. Levi, 912 F.3d 79, 94 (3d Cir. 2018) (holding that although Davis and Carlson extended Bivens to the Fifth and Eighth Amendments, respectively, they only addressed gender discrimination and inadequate medical care claims, and "even if there are 'significant parallels to one of the Court's previous Bivens cases,' 'a modest extension is still an extension.'" (quoting Ziglar, 137 S. Ct. at 1864)); see also Hernandez v. Mesa, 589 U.S. ___, 140 S. Ct. 735, 743 (2020) ("A claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized."); Malesko, 534 U.S. at 68 (The Supreme Court has "consistently refused to extend Bivens liability to any new context or new category of defendants" beyond alleged violations by federal actors of the Fourth Amendment, Fifth Amendment Due Process Clause, or Eighth Amendment Cruel and Unusual Punishments Clause).

Next, we consider whether any alternative remedies exist and whether special factors counsel against extending the Bivens remedy. Ziglar, 137 S. Ct. at 1859-60. Defendants argue that the BOP's Administrative Remedy Program provides an alternative process. (Doc. 80 at 37-38). The Supreme Court has found that "administrative review mechanisms" can provide "meaningful redress"—even if they do not "fully remedy the constitutional violation." Malesko, 534 U.S. at 68. The court concludes that the BOP's Administrative Remedy Program provides an alternative process. Significantly, the fact that Landis may have been unsuccessful in utilizing the administrative process does not mean that such a process does not

exist as an alternative remedy.  <u>Malesko</u>, 534 U.S. at 69 (noting that "[s]o long as the plaintiff had an avenue for some redress, bedrock principles of separation of powers foreclosed judicial imposition of a new substantive liability").  "[W]hen alternative methods of relief are available, a <u>Bivens</u> remedy usually is not."  <u>Ziglar</u>, 137 S. Ct. at 1863.

Defendants also rely on special factors including the separation-of-powers concerns raised by Congress' repeated legislative action on safeguarding the rights of federal prisoners without providing a damages remedy against federal actors. (Doc. 80 at 36, 38-40).  They also cite to various legislative acts including the Civil Rights Act of 1871, the Prison Litigation Reform Act of 1995, and the Prison Rape Elimination Act of 2003, none of which provide a cause of action for damages in the federal arena.  (<u>Id.</u>)

Based on the foregoing, we conclude, as many courts have concluded,[7] that extending <u>Bivens</u> to Landis' Eighth Amendment excessive force claim would be contrary to law.  Accordingly, defendants' motion to dismiss this claim will be granted.

---

[7]  <u>See, e.g.</u>, <u>Brown v. Nash</u>, No. 3:18-CV-528, 2019 WL 7562785, at *4-6 (S.D. Miss. Dec. 13, 2019) (concluding that <u>Bivens</u> did not extend to inmate's Eighth Amendment claim of excessive force, noting, <i>inter alia</i>, that concerns of institutional security counseled hesitation), <u>report and recommendation adopted</u>, 2020 WL 129101 (Jan. 10, 2020); <u>Hunt v. Matevousian</u>, 336 F. Supp. 3d 1159, 1169-70 (E.D. Cal. Oct. 1, 2018) (declining to extend <u>Bivens</u> to inmate's Eighth Amendment claim of excessive force, noting that "Congress has been active in the area of prisoners' rights, and its actions do not support the creation of a new <u>Bivens</u> claim").

### K.    Injunctive and Declaratory Relief

To the extent that Landis seeks declaratory or injunctive relief, his claims are moot because he is no longer housed at USP-Lewisburg.  (See Doc. 72 at 41-43, 51-52).  Article III of the Constitution provides that the judicial power of the United States shall extend to "cases" and "controversies." U.S. CONST., art. III, § 2. "[F]ederal courts may adjudicate only actual, ongoing cases or controversies," Lewis v. Cont'l Bank Corp., 494 U.S. 472, 477 (1990), and "[i]t is a basic principle of Article III that a justiciable case or controversy must remain 'extant at all stages of review, not merely at the time the complaint is filed,'" United States v. Juvenile Male, 564 U.S. 932, 936 (2011) (citation omitted).  Generally, an inmate's transfer from the facility complained of moots claims for equitable and declaratory relief. Sutton v. Rasheed, 323 F.3d 236, 248 (3d Cir. 2003); Johnson v. Wenerowicz, 440 F. App'x 60, 62 (3d Cir. 2011) (holding that the prisoner's request for injunctive and declaratory relief against the named defendants was rendered moot by his transfer to another prison).  Because Landis is no longer incarcerated at USP-Lewisburg, he does not present a live case or controversy for injunctive or declaratory relief regarding the policies or practices at that facility.

### L.    Leave to Amend

As stated *supra*, when a complaint fails to present a *prima facie* case of liability, district courts must generally grant leave to amend before dismissing the complaint.  See Grayson, 293 F.3d at 108.  Specifically, the Third Circuit Court of Appeals has admonished that when a complaint is subject to dismissal for failure to state a claim, courts should liberally grant leave to amend "unless such an

amendment would be inequitable or futile." Phillips, 515 F.3d at 245 (citing Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004)).  The court finds that further amendment would be futile because Landis has filed several amendments to the complaint and has failed to remedy the deficiencies.  See Jones v. Unknown D.O.C. Bus Driver & Transp. Crew, 944 F.3d 478, 483 (3d Cir. 2019) (where inmate plaintiff "has already had two chances to tell his story . . . giving him further leave to amend would be futile.").

IV.   **Rule 56 Motion**

   A.   **Legal Standard**

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact" and for which a jury trial would be an empty and unnecessary formality.  FED. R. CIV. P. 56(a).  The burden of proof tasks the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief.  Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The court is to view the evidence "in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor."  Thomas v. Cumberland County, 749 F.3d 217, 222 (3d Cir. 2014).  This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986).  Only if this threshold is met may the cause of action proceed.  See Pappas, 331 F. Supp. 2d at 315.

### B.    Exhaustion of Administrative Review

Defendants seek an entry of summary judgment with respect to Landis'

Eighth Amendment deliberate indifference and excessive force claims based on his

failure to exhaust administrative remedies.  (Doc. 80 at 41-42).  Even if the court

were to imply a Bivens remedy with respect to the excessive force claim, the

uncontroverted evidence reveals that Landis failed to exhaust his administrative

remedies prior to initiating this action.

Pursuant to the Prison Litigation Reform Act ("PLRA"), a prisoner must

pursue all available avenues of relief through the applicable grievance system

before initiating a federal civil rights action.  See 42 U.S.C. § 1997e(a); Booth v.

Churner, 532 U.S. 731, 741 n.6 (2001) ("[A]n inmate must exhaust irrespective of the

forms of relief sought and offered through administrative avenues.").  Section 1997e

provides, in relevant part, that "[n]o action shall be brought with respect to prison

conditions under [S]ection 1983 of this title, or any other [f]ederal law, by a prisoner

confined in any jail, prison, or other correctional facility until such administrative

remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  The exhaustion

requirement is mandatory.  Williams v. Beard, 482 F.3d 637, 639 (3d Cir. 2007);

Booth, 532 U.S. at 742 (holding that the exhaustion requirement of the PLRA

applies to grievance procedures "regardless of the relief offered through

administrative procedures"); see also Nyhuis v. Reno, 204 F.3d 65, 68 (3d Cir. 2000)

(holding that that PLRA's exhaustion requirement applies to Bivens claims).

The Third Circuit has further provided that there is no futility exception to

Section 1997e's exhaustion requirement.  See Nyhuis, 204 F.3d at 75-76.  Courts

have typically required across-the-board exhaustion by inmates seeking to pursue claims in federal court.  See id.  Additionally, courts have interpreted this exhaustion requirement as including a procedural default component, holding that inmates must fully satisfy the administrative requirements of the inmate grievance process before proceeding with a claim in federal court.  See Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004); Oriakhi v. United States, 165 F. App'x 991, 993 (3d Cir. 2006) (providing that "there appears to be unanimous circuit court consensus that a prisoner may not fulfill the PLRA's exhaustion requirement by exhausting administrative remedies after the filing of the complaint in federal court").  Courts have also concluded that inmates who fail to complete the prison grievance process in a full and timely manner are barred from subsequently litigating claims in federal court.  See, e.g., Booth v. Churner, 206 F.3d 289 (3d Cir. 2000); Bolla v. Strickland, 304 F. App'x 22 (3d Cir. 2008).

This broad rule favoring full exhaustion allows for a narrowly defined exception; if the actions of prison officials directly caused the inmate's procedural default as to a grievance, the inmate will not be required to strictly comply with this exhaustion requirement.  See Camp v. Brennan, 219 F.3d 279 (3d Cir. 2000); see also Robinson v. Superintendent Rockview SCI, 831 F.3d 148, 154 (3d Cir. 2016) (holding that prison officials rendered plaintiff's administrative remedies unavailable when they failed to timely respond to his grievance and ignored his follow-up requests for a decision).  However, courts also recognize a clear "reluctance to invoke equitable reasons to excuse [an inmate's] failure to exhaust as the statute requires."  Davis v. Warman, 49 F. App'x 365, 368 (3d Cir. 2002).  Thus, an inmate's failure to exhaust

will be excused only "under certain limited circumstances," <u>Harris v. Armstrong</u>, 149 F. App'x 58, 59 (3d Cir. 2005), and an inmate can defeat a claim of failure to exhaust only by showing "he was misled or that there was some extraordinary reason he was prevented from complying with the statutory mandate." <u>See</u> <u>Warman</u>, 49 F. App'x at 368.

In the absence of competent proof that an inmate was misled by corrections officials, or some other extraordinary circumstances warranting a departure from strict compliance with the exhaustion requirement, courts frequently reject inmate requests for their failure to exhaust to be excused.  An inmate, therefore, cannot excuse a failure to comply with these grievance procedures in a timely manner by simply claiming that his efforts constituted "substantial compliance" with this statutory exhaustion requirement.  <u>Harris</u>, 149 F. App'x at 59.  Furthermore, an inmate cannot avoid this exhaustion requirement by merely alleging that the administrative policies were not clearly explained to him.  <u>Warman</u>, 49 F. App'x at 368.

Here, defendants argue that Landis failed to exhaust his administrative remedies with respect to his <u>Bivens</u> claims.  Defendants have supported this argument with record evidence, including the declaration of BOP Attorney Jennifer Knepper, the BOP Administrative Remedy Generalized Retrieval, and the relevant administrative remedies.  (Doc. 79-2).  Landis has not refuted defendants' argument and has not provided any evidence, *via* an affidavit, declaration, or any other statement made under the penalty of perjury to support any claim that his administrative remedies were destroyed or that the administrative remedy process

was not available to him.  The record simply does not support a finding that the administrative process was unavailable to Landis.  To the contrary, it establishes that Landis had ready access to the administrative remedy process, filed numerous administrative remedies, and properly exhausted nine of them.  Upon review of the evidence, it is clear that Landis failed to exhaust administrative remedies regarding his present claims before initiating the instant action.

From the time Landis was transferred to USP-Lewisburg on December 29, 2017 to the filing of this action, he filed sixty administrative remedies, but exhausted only nine of them.  (Doc. 79 ¶¶ 12, 13).  The uncontroverted evidence reveals that none of the exhausted remedies pertain to the claims in this action.  Specifically, they do not address Landis' placement in restraints in January 2018 or allegations that staff fabricated documentation to justify Landis' placement in restraints.  (Id. ¶ 13).  Of the nine exhausted remedies, only two—Administrative Remedies 947097 and 967256—are tenably relevant.  (Doc. 79-2 at 115-16, 144-45).

On July 11, 2018, Landis filed Administrative Remedy 947097, wherein he alleged that an officer retaliated against him on June 21, 2018 by searching his cell, issuing a fabricated incident report, and changing his cell assignment.  (Doc. 79-2 at 115-16).  This remedy was filed six months after the events giving rise to this action and does not mention the falsified documents relevant to this lawsuit.  (See id.)

On February 15, 2019, Landis filed Administrative Remedy 967256, wherein he claimed that BOP staff at various facilities failed to comply with policy by not using the least restrictive means to restrain inmates.  (Doc. 79-2 at 144-45).  Landis stated that he witnessed officers at USP-Lewisburg put two inmates in hard

ambulatory restraints on January 18, 2019.  (Id.)  Landis did not mention the use of restraints as applied to him on January 3, 11, and 12, 2018, and did not grieve the alleged falsified documents by staff.  (See id.)  Moreover, Administrative Remedy 967256 was filed in February 2019, more than one year after the use of restraints on Landis.

The PLRA mandates exhaustion of available administrative remedies before bringing suit and it is beyond the power of this court to excuse compliance with that requirement.  In light of the undisputed facts and relevant evidence of record, the court concludes that Landis has failed to produce any evidence to overcome defendants' summary judgment motion.  Landis' failure to exhaust available administrative remedies prior to bringing this action compels an entry of summary judgment in favor of defendants with respect to the Bivens claims.

V.    **Conclusion**

We will grant defendants' motion (Doc. 73) to dismiss and for summary judgment.  An appropriate order shall issue.


/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:        September 30, 2021